The next case on the call of the jacket is agenda number 124213, Shawna Johnson v. Illinois State Police Ms. Buell, please Good morning, your honors, counsel, and may it please the jury, Assistant Attorney General Kaitlyn Buell on behalf of the Respondent of the Illinois State Police. Those with convictions for misdemeanor crimes of domestic battery cannot possess firearms under federal law through Section 922G9. The seven federal courts that have considered the question have unanimously held that Section 922G9 is constitutional under the Second Amendment, both facially and as applied. Under the Illinois FOID Act, one cannot possess a FOID card if doing so is contrary to federal law, like Section 922G9. In 2012, Johnson was unable to purchase a handgun in Indiana because of her battery conviction, which is a misdemeanor crime of domestic violence under federal law. After this, ISP revoked her FOID card because of that conviction, and Johnson filed the Section 10 petition alleging that Section 922G9 and the provisions of the FOID Act that incorporated it were unconstitutional under the Second Amendment as applied to her. The circuit court, ignoring all federal precedent, agreed with Johnson and then ordered ISP to reissue her FOID card even though doing so was contrary to federal law. Those were the only issues that were presented in the circuit court and are the only issues that are currently before this court. There is an issue about the FOID statute itself that was raised in the briefs, correct? Correct. Is that before this court? That is not before this court, Your Honor, because in Johnson's overall arguments concerning the FOID Act in its entirety were never raised in the circuit court. She's essentially amending her complaint for the first time on direct review before this court. And this court has this case because of the finding of unconstitutionality, but not the argument that is being raised here, is that correct? Absolutely. The only arguments that are actually before this court are whether Ms. Johnson's constitutional as-applied challenge to Section 922G9 and the provisions of the FOID Act that incorporated it, which are specifically Sections 8N of the FOID Act, 10B, and 10C4. Accordingly, this court should reverse the circuit court's judgment and follow all federal precedent concerning the constitutionality of Section 922G9, and in turn, the provisions of the FOID Act that incorporate it, for the following three reasons. First, Johnson remains federally prohibited from possessing a firearm and so cannot obtain full relief in this lawsuit. Second, every federal court considering the question has found that Section 922G9 is constitutional under the Second Amendment, and there is no reason for this court to depart from those unanimous precedents. And third, the circuit court should have rejected Johnson's arguments concerning the lack of recidivism and the amount of time since her battery conviction, because federal courts have found that these arguments are inappropriate and the Second Amendment as-applied challenge. To begin, Johnson is federally prohibited from possessing a firearm and cannot obtain full relief in this lawsuit. Johnson's battery conviction is a misdemeanor crime of domestic violence under federal law, and because of that conviction, she is barred from possessing firearms under federal law. She does not meet any of the exceptions outlined in Section 921A33BII. Under this exception, a misdemeanor crime of domestic violence will not count for purposes of a federal firearm prohibition if that conviction has been expunged or pardoned or if one has had their civil rights restored. There is not any expungement for this offense in Illinois, and at this time, Johnson does not have a pardon. But she does also not qualify for the civil rights restored provision in Section 921. Counsel, would you agree that there's a strange intersection here of state and federal law that results in what amounts to a lifetime denial of petitioner's Second Amendment rights? There is an interplay that is a little bit interesting between state and federal law, of course. Interesting is different than strange? It is, but it's not necessarily a lifetime ban, Your Honor. And that is because Johnson could still get relief under the pardon provisions, and she could also still get relief under the federal safety ballot. We recognize that that is not funded. However, as this Court did state in quorum, something is not necessarily futile if it's never been tried. And if she wasn't successful in getting relief under the federal safety ballot from the federal authorities, she might be able to sue an appropriate federal entity in an appropriate venue, perhaps in federal court. That intersection does not rise to the level of an as-applied challenge? No, and in fact – A viable as-applied challenge, you should say. It doesn't raise to the level of a viable as-applied challenge? No. In fact, in terms of the federal courts, both the Sixth and the Ninth Circuit have held that because Section 922G9 is constitutional, because it has a reasonable fit between the government's significant interest in preventing domestic gun violence and the disarmament of those with misdemeanor crimes of domestic violence, it's actually very inappropriate for courts to consider the passage of time-sensitive convictions or the lack of recidivism because of Congress's value judgments that it made. And both the Sixth and the Ninth Circuits have held that Heller actually does not require any sort of individualized hearing to determine if an individual has properly been categorized as one with a misdemeanor crime of domestic violence. Allowing these sorts of individualized hearings and exceptions to the category of those with misdemeanor crimes of domestic violence would create exceptions that Congress itself did not establish. Individualized hearings would undermine Congress's judgment that it's the risk or the potential for domestic violence or danger with firearms in domestic violence situations, not the likelihood, probability, or certainty of that violence that is sufficient to be placed within that category. Could she file a DEC action in the federal court? Potentially. She would need to somehow sue an appropriate federal entity, be it the ATF or the Attorney General, in an appropriate forum, perhaps federal court. But that is something to remove that federal prohibitor. That is an issue that is between the federal authorities and Ms. Johnson. It's not something that ISP itself has the power to do. Indeed – Let's be honest. There's kind of an issue here about a state court finding a federal statute unconstitutional. Yes. It would, without much analysis, that most people would think the proper place for that discussion to take place would be in the federal court. And seven federal courts have held that this statute is constitutional. And this court has said in its past tense that when a federal court has opined on a statute's constitutionality, this court will often follow. And that is most likely the best course of action. And that is also because after the 2013 amendments to the Floyd Act, the General Assembly made clear that courts could not grant relief in a substantial justice hearing if a petitioner is prohibited from possessing firearms under federal law and cannot grant relief if it is contrary to federal law. Nor can ISP. And the federal law that is in question, of course, is Section 922.9. And every federal court has found, under intermediate scrutiny, that Section 922.9 is constitutional under the Second Amendment. And this court should follow suit and reverse the circuit court's judgment on this basis. Indeed, with her MCDB conviction, Johnson may even be outside of the Second Amendment protections. But these federal courts have found that Section 922.9 is constitutional, even applying intermediate scrutiny. Under intermediate scrutiny, the government must establish a significant, substantial, and important objective, and there must be a reasonable fit between that significant objective and the challenge restriction. These federal courts have concluded that the government had a significant and substantial, important objective in reducing domestic gun violence, not just gun violence in general. Counsel, let me stop you there. You mentioned that twice, domestic gun violence. I may be mistaken on the facts in this case, so correct me if I'm wrong, but I thought the domestic violence factual scenario was that physical striking, and that was it. There was no gun involved, right? Yes, Your Honor. Yes, there was no gun involved? There was no gun involved. It was a physical altercation. However, Congress, when it was looking at domestic violence, did not necessarily restrict it to just domestic gun violence. Congress was worried about situations of domestic violence in general, and even when you had physical altercations or domestic violence, because of the high risk of recidivism, because of the likelihood of potentially introducing a firearm into that situation, that was why Congress was acting. Indeed, Congress... Well, help me out on this. I mean, that's a general scenario, general presumption, and this is an as-applied challenge, so don't we have to consider the facts in this case? You must consider the facts of the case. However, in terms of...my answer is twofold. First, in terms of the intent of Congress, it was actually seeking to close this loophole that had been created, and what had happened was for situations of domestic violence, individuals were being charged with felonies and were able to plead down to misdemeanor offenses, and because of the way before Section 922 G9 existed, individuals would still be able to possess firearms, even though they had been convicted of misdemeanor crimes of domestic violence, introduce them into their homes, and as Swain said, the presence of a gun in the home of a convicted domestic abuser was strongly and independently associated with an increased risk of homicide, and Congress found that that increased risk was enough to warrant creating this legislation to bar those who had misdemeanor crimes of domestic violence from possessing firearms. And in terms of the as-applied challenge, as the Sixth and the Ninth Circuit have said, because this provision of Section 922 G9 is constitutional, arguments that Ms. Johnson has made, which the only arguments that she has made, that she is outside of the category, is that there is no evidence that she has been recidivist, and that there is a large amount of time since her conviction. Those are inappropriate, because Congress had made this zero-tolerance policy towards guns and domestic violence in Section 922 G9, and had Congress wanted to limit the application of Section 922 G9 to recent domestic violence convictions, or having a good behavior clause, or put a time limit on it, it could have done that, but it did not do so. And so allowing as-applied challenges with these sorts of arguments would actually create an exception to Section 922 G9 that Congress did not establish. And that was what the Sixth Circuit said in Stemmel, and the Ninth Circuit said in Chauvin. You know, the State's review process under Section 10 actually entails the same considerations, I think, same practice that would be considered under 925 C of the federal statute. So why shouldn't the State conduct an individualized review that could remove the federal disability and restore firearm rights, especially since the federal government isn't doing it, and there's no avenue there? Well, first of all, the General Assembly, when it acted, was specifically tying itself to the federal law and the federal interpretations, which include the federal safety file application, not some sort of State process. And in addition, as the Sixth Circuit stated in Stemmel, and the United States Supreme Court has stated in Bean, these sorts of 925 C factors are really best left to the executive branch, and that's because it has the investigative authority and the ability to really opine as whether a matter of federal law someone can once again possess firearms. So we have a situation here where this woman was sentenced to one day in jail but given credit for time served. Had she not had credit for time served, she would have had her civil right of voting terminated, which would have been restored upon her release. Is that correct? No. If she had been sentenced to one day in jail after she was convicted, so she had spent that time, that time that is spent in jail before she is pleading guilty is time in which you are a pretrial detainee. Right. But I said if she had been sentenced without pretrial or preconviction detention being credited, she would have qualified for a firearm. She would have been able to qualify for the civil rights restore provision under Section 922G9. And because Illinois does not have any sort of restriction on possession of a firearm for misdemeanors, that would invoke the unless clause of Section 921A33BII. Because of that, she would once again be able to possess firearms under federal law. And the United States Supreme Court in Logan actually really highlighted this disparity that can potentially exist, that there can be some individuals who do have their civil rights revoked and restored because they've been charged with felonies or they have been incarcerated. And in some situations, they would not be. But the United States Supreme Court said that that was really a question and a complaint with Congress, not for the courts itself. Statutory question. Does a misdemeanor conviction, any kind of misdemeanor conviction, affect civil rights? That's my question. Tell me about how not felons, but misdemeanors, how that's affected. In Illinois, there are no civil rights that are revoked because of your misdemeanor conviction. In Illinois, only- So it doesn't matter if you were incarcerated one day or not? If you were incarcerated one day for your misdemeanor conviction, then you would have your civil right. So under the statute, it's not just felons. It's specifically misdemeanors, misdemeanors who serve some period incarcerated, although in county jail and not in the Department of Corrections. It would qualify to individuals who were incarcerated, not pretrial, but as a sentence. And that's because under the Illinois Constitution, one loses the right to vote upon imprisonment. And that right to vote- Imprisonment. After imprisonment is restored to you once you leave imprisonment. So if you were sentenced to one day in prison after you pleaded guilty and you served that one day in prison, then you would have your right to vote revoked and restored to you. And you would qualify for that exception. And I'll just discuss or check on the last of the issues here. And I have a second question. But does imprisonment necessarily mean misdemeanors? Have cases said that? It just- the way that the state has interpreted it, it's both felons and misdemeanors. It just means- we have interpreted it as- Illinois State Police has interpreted it as any individual who is serving an imprisonment term as mandated by a court. So it could be a misdemeanor. It could also be a felon. What's wrong with the defendant's argument that the issuing of the Floyd card in 2010 was a restoration? It was not a restoration because Illinois does not have any sort of firearm restoration rights, as pointed out in the Illinois Appellate Court's decision in Heitman. Indeed, even if this court were to define civil rights to include firearm rights, in the Section 921 exception, it doesn't have any effect on Johnson's application here. And that's because all of the federal courts have held that the civil rights that are discussed are the rights to vote, hold public office, and serve on a jury. They are not firearm rights. And even if they were firearm rights, Illinois does not take away firearm rights to misdemeanors and then restore it to them the way that the petitioner in Massachusetts had in the DuPont case. Isn't it rather an anomalous situation? Because someone that is sentenced, gets a sentence, is probably likely a more serious offense than someone that gets a day in credit for time served. The more serious offender, ostensibly maybe a bigger risk, will come under the civil rights restored exemption. But someone that's a lower level offender and maybe a lower level risk is barred. Well, the United States Supreme Court really highlighted this disparity in Logan. And one thing that I would like to point out is just because your civil rights have been restored to you is not necessarily the end of the analysis. So, for example, for felons, let's say someone who had been convicted of murder, that individual would be able to actually have their rights restored, but they would be unable to potentially possess firearms in Illinois. Because in Illinois, under the operation of the Unless Clause, as was explained by the United States Supreme Court in Karen, we still have a restriction for felons possessing firearms. And so felons themselves would have to get over that hurdle as well before they could once again possess firearms under federal law. But that is still something that would need to be litigated between the felon and the appropriate federal authorities. And for those reasons, we would ask that you reverse the Circuit Court's judgment. Thank you. Thank you. Mr. Jensen, please. Good morning. David Jensen for Appellee Shawna Johnson, who is seated at the rear of the courtroom. May it please the Court. First and foremost, we are not here asking for an individualized determination. My client already had an individualized determination. We took a full day of testimony from over half a dozen witnesses, including police officers that were involved in the underlying incident. And as a result of that, the Court issued findings of fact that, based on a review of the facts and circumstances, Ms. Johnson was unlikely to be a felony in the future and that the issuance of the avoid card would be in the public interest. However, because of the interplay between federal law and state law, and because, more correctly, the Illinois legislature has incorporated the federal law into the FOIA requirements, she is still unable to get that card. Now, I think where we should really start talking about is, one moment, Logan. The two essential takeaways from Logan are, one, the Court was not deciding the meaning of the term civil rights. The issue in front of the Court in Logan was the term restored. At the time Logan went up to the Supreme Court, there was no split between courts of last resort on that civil rights question. As we showed in the briefing, early on, after the Firearms Owner Protection Act, which is what put that civil rights restored language into these two disqualifiers in 1986, early on, federal courts, including one in Illinois, issued opinions that strongly suggested that firearms rights were indeed within the realm of civil rights. The Supreme Court's decision in Beecham also suggested that. When Logan went in front of the Supreme Court, the parties were in agreement that this free rights approach was the one that applied. It's well established that when parties are in agreement before the Supreme Court, on a point of law, the Court, this is coming from Hemingroup versus City of New York, 559 U.S. 1, assumes without deciding that, in this case, the failure to file a chain contact material can serve as a recalibrated offense. But it does not stand as authority that, under this case, the failure to file chain contact materials is a recalibrated offense. Now, the second takeaway from Logan is the Court did not uphold the jail-no-jail extension under heightened scrutiny, as has been stated in the state's brief. Under Chapman versus United States, which is 500 U.S. 453, the rational basis review standard applies to statutory sentence enhancements. And that was the issue of Logan, because the question was whether a statutory sentence enhancement got capped under the penalty. In Chapman versus United States, the government made the argument that because the statutory sentence enhancement implicated someone with liberty interests, heightened scrutiny applied. That was rejected. So what Logan really stands for is that this jail-no-jail extension barely passes rational basis review. It does not mean that this is an acceptable way to dole out a fundamental constitutional right. And the absurdity of that situation is actually, frankly, it's a lot more absurd than has been articulated already in front of this Court. You know, literally, my client could have murdered 10 people, waited 20 years after her release from confinement, and at least had the ability to both get a point card back and do so in a way that everyone agrees would satisfy federal law. But what about the argument that she's still under Illinois law but could not possess a weapon? No, she could. If she waited 20 years and got relief under Section 10 of the Floyd Act, that would remove the Illinois bar from possession because it would be enforceable. So she's had a murder conviction and she can have a weapon. I'm not saying the Court's going to grant relief under those circumstances, but under the statute, under Section 10 of the Floyd Act, once 20 years has passed from the release of confinement. I'm not talking about the Floyd Act. Let's say she gets a card. Can she possess a weapon after having been convicted of murder? Yes, because in Illinois, the civil rights would have been restored on her release from confinement. So when the Court then 20 years later said, okay, you can have John's back, there would be nothing prohibitive under Tarrant, under the M. West Clause, or anything. If instead of getting hit with no jail and a $100 fine, the judge in Wabash County had said, you know what? I've had enough of you. You're going to jail for two days and you're paying us 500 bucks. She would have been able to get a Floyd card the moment she got out of jail. How much sense does that make? What's the justification that's been offered for this? Can I ask you this? If today we agree with you and we say she should have a Floyd card, can she go and purchase a weapon? Well, that raises a somewhat thorny issue about exactly how the background check system works in Illinois. And the truthful answer is, I don't know. A year ago, I could have given you a pretty solid answer. Based on more recent developments, it's not clear. It would actually be a better question for the state. But the significant thing may be that she has a Floyd card. Would there still be a federal impediment to her purchasing a gun? According to who? And I don't mean to be difficult in saying that, but if the Civil Rights Restored Exception applies, then there wouldn't be a federal impediment. If the prohibition is unconstitutional as applied, then there wouldn't be a federal impediment. However, race judicata will not attach to this decision as it concerns the federal government. To get relief from the potential prosecution of the federal government, she would need to file a separate claim against them. So why did she do that? Because the whole thing is irrelevant in the first place because she doesn't have a state Floyd card or the ability to possess firearms under state law. Or is it irrelevant because she can't purchase a gun afterwards? Well, no, but that's really not true because first of all, if we're talking about the actual how this would work out application, she could do one of two things. One, she could buy a gun from someone who's other than a licensed dealer and does not need to go through a federal background check. Two, she could build her own gun, which might not sound that unrealistic. I've done it. And third, there are also a certain subset of firearms, to my understanding, that all within the definition of firearm in Illinois, but not within the definition of firearm federally, meaning there would be no impediment to owning those guns. But all other issues aside, even if she can't do anything, the actual question is, is she entitled to a Floyd card, which is what is necessary to exercise second-minute rights under Illinois law. I would really like to emphasize the civil rights restorative issue, though. That was something we talked about quite extensively at the trial court in the interim. There was a ruling from an intermediate appellate court indicating that that approach wouldn't apply. So because of the start of the CISIS rules in Illinois, the trial court rejected it. But what's very significant is this. When I looked over your decision in Grant, I walked away with a very solid impression that the court, because we're coming up with the assumption that the Supreme Court had adopted this three-rights-only view in Logan. If you drill down on that, that's not the case. The issue certainly wasn't presented. The actual basis for coming up with this three-rights-only view on civil rights restorative was the Sixth Circuit literally plucking it out of thin air in 1989. Now, from a historical perspective, the oldest written codification we have of the rights of the individual in our English legal tradition is the Declaration of Rights, 1689, in which the right to have arms is codified in Article VII, right along the right to religion, the right to juries, the right to the rule of law. Blackstone commentaries on the law of England discussing the fundamental rights of men. The right to have arms for defense is the fifth auxiliary right. Our Constitution, the Bill of Rights, what the anti-federalists wanted appended to the Constitution as a result of ratifying conventions. The Second Amendment is the second right. Finally, McDonald v. Chicago, the incorporation of the Second Amendment against the states. The entire decision is replete with a discussion of how the right to have arms for defense is fundamental to the nature of our concept of order and liberty. There is simply no principal reason for concluding that gun rights would not be within the penumbra of civil rights in a law that was intended on its face to allow states to restore gun rights. One other thing, and this is a really important point on this issue, they're making a somewhat circular argument that a court can't grant relief, even if the whole civil rights thing is right, a court can't grant relief because when the court is issuing its order, the federal prohibition still applies. That is an atextual interpretation of Section 10 of the FOIA Act. First of all, there are other provisions of the FOIA Act, like Subsection F, that authorize the court to grant relief from federal mental health disqualifiers. They would, in Section C-4, about a court should not grant relief if it would, that word, would not be consistent with federal law. If that has the interpretation that they're advancing here, then courts would never be able to grant relief under Subpart F, which was enacted, I believe, in 2013, six years ago. The word that they used was, significantly, the word that they used was would. It would be contrary to federal law. Would is a subjunctive adjective. It's talking about the state of affairs in the future. What would you do if? So this interpretation, that the court's order restoring gun rights, she had a FOIA card, it was taken away, it's a consequence of the conviction, the court looks at the facts and circumstances, and says, I think under these circumstances, they should get the right back. Not according to that, the status of something that restores the right, so in other words, saying that the court can't act because the right hasn't been restored until after the court is acting, is, aside from being unduly circular, leading to results that the legislature could not have possibly intended, since it did intend for people to get released when they're set apart out. Now, the biggest thing is, and this simply hasn't been touched on, or has hardly been touched on, is, moving back to this constitutional argument, we're not making some argument about the passage of time standing alone. In Scalene, in the Southern Circuits, upheld the 922-G9 law, on the rationale that we don't think, in its normal application, this is going to stand as a perpetual ban on people who no longer pose a risk to the community. Here, this is acting as a perpetual ban to someone who no longer poses a risk to the community. What has the state offered to justify this ban? The government has the burden of justifying restrictions on constitutional rights. The legislature decided to incorporate federal law. All that we have seen are at least three studies that go back to show risk of recidivism a maximum of five years into the future. This incident occurred 18 years ago. The issue here is the state statute incorporated federal law. In the Coram decision, Justice's first concurring decision talked about that issue of some length in a manner that I thought was entirely correct, but that the issue here is state law. The state of Illinois was not standing alone before its federal law. There have been amendments made to the Floyd Act saying the state needs to consider federal law and make determinations about whether or not federal law is satisfying. One point that does need to be made, there's been an argument that in the District of Columbia versus Heller decision, there was a discussion about the types of regulations that the court considered would be presumptively lawful. And the argument has been made that both those restrictions, as well as the federal law, as anything that someone says is analogous should be considered to be wholly outside the scope of the Second Amendment. This court rejected that argument in people of the, I don't know if I'm saying this right, Sherriff's 2018 decision, but the specific argument that things that were described as presumptively lawful would not have any level of scrutiny attached to them because they were outside the scope of the Second Amendment. Are you specifically asking us to find the federal statute which prohibits it under the Illinois law unconstitutional? Well, I'm sorry to pause you for answering the question, but it is a little bit of a gory hit, not admittedly. Ultimately, we're asking you to find the federal law unconstitutional in this application, but the only reason the federal law applies is because state law has incorporated it. So in some ways, it's not that similar to when a state court has, for example, adopted federal standards to determine some state constitutional issue. Yes, it's ultimately state law, but you're using federal law to make that determination. So your argument that firearm rights restored as a civil right are spilling to the constitutionality of the federal statute? It would avoid going to the constitutionality of the federal statute, but regardless, on either of those prongs, the end result is going to be there is a conflict of law between the courts. That's what I'm avoiding. That's the way the legal system works. If we were to find the federal statute unconstitutional, would Johnson be able to purchase a firearm through a federally licensed firearm dealer? Well, see, that's where I'm saying I'm having trouble getting a clear answer for you. The way this actually works is, Illinois is what's called a POC, which means that Illinois State Police conducts background checks on gun sales and gun stores. I have been told, and I can assure you this is not in the record, but there's a memorandum of understanding between Illinois State Police and some federal agency that in some way, shape, or form requires ISP to follow the federal agency's interpretation of the law in making decisions. However, the Illinois legislature recently passed a law legalizing recreational marijuana and stating that recreational marijuana use will not be considered to be an unlawful use or other addicted to a controlled substance or marijuana as specified in 922G, whatever it is. One of the federal prohibitors applies to that, which suggests to me that the legislature is now taking the position of trying to tell ISP how it should be implementing that MOU. So, I'm sorry to give you a somewhat long-winded, unclear answer, but it's somewhat unclear. The truth is, the answer I have is somewhat unclear. Mr. Jensen, do you agree that federal appellate courts have uniformly held that 922G9 is constitutional under the Second Amendment, both facially and as a plan? Certainly, they've upheld it facially. I don't say they couldn't. And no other distinction, if that's the case, that this is an as-applied challenge based on the incorporation of federal law into state law? Is that the distinction you're making? No, no, no. The distinction we're making is that on the specific facts presented here, where you both have someone where the cited danger in Skalene and everywhere else is recidivism. The point for being concerned about recidivism is pretty clearly passed, and there's no reason to think otherwise. And that person has been found, based on an individualized review of the circumstances surrounding the conviction in her current life, not to pose a danger to the community. To continue applying the ban in that situation is unconstitutional. And that was never decided in any of those federal cases that upheld the as-applied challenges? Well, I am not aware of any federal courts that have struck down 922G9 in part on that consideration. However, there are only a couple cases that have actually considered someone who is meeting these parameters in the first place. And I think that the reality is that in most of the country, if there is some $100 fine level misdemeanor offense 15 years ago, there's likely going to be some relief mechanism available. Here, she's tried everything she can. This is in the record, but just so it's clear, she tried to obtain a pardon for independency of this case. It was denied. The only thing I can point to now is, well, maybe Congress would refund 925C. Maybe Congress would change the law. Maybe the legislature would change the law. Maybe a new governor will decide she should have a pardon. This is the level of what we're talking about where she could potentially get relief. If that level of potential relief is enough to keep her from having a constitutional claim, the result would be no law would ever be unconstitutional. May I ask you a point of question before the red light goes on? You raised in your brief another argument about the facial constitutionality of the FYP card. Are you still pursuing that? How do we answer that when that was not the basis of the finding of unconstitutionality below? Your Honor, in all candidate, we were trying to do nothing but be helpful to the court. That was not an argument we advanced in the court below. However, in the interim, people versus ground got here. That was clearly an issue in the case. If the court granted relief on one of those grounds, a likely result would be that the issues we're raising go away. It made sense to brief the issue. So if this opinion did not address that issue, you'd be okay with that? If we say, as we've said before, that the only reason the case is before this court on direct review is because of a finding of unconstitutionality, and now you're making a separate claim here, that that separate claim is not before this court, and we just ended there, would that be appropriate? I don't want to be in the position of simply waiving the claim. No, no, and the question is whether this court can address it. Well, I think the court could address it by saying we've already addressed this issue in our decision in Brown. I'm not really looking for a separate line of this analysis and decision in addressing that unless the court is inclined to give it, since the issue is here and it's still pending in front of the court in order to see a prudent briefing. And at that, the red light has definitely been on for a couple of minutes. If no one has any questions, we would respectfully ask that the circuit and the court's judgment be affirmed. Thank you. Thank you, Mr. Johnson. Your Honors, I would like to start on rebuttal, discussing Johnson having a void card. If Johnson does have a void card, she still cannot possess firearms federally. She cannot purchase firearms even if she built her own gun. She would still be able to be charged under Section 922G9 for being in possession of a firearm. After all, as Johnson has pointed out, this decision is not binding on federal authorities. The only issue would be the justiciability of the void card between her and ISP. But without removing that federal firearm prohibitor, she cannot possess or buy firearms. And she cannot get relief until she has relief from the federal authorities first, after the 2013 amendments to the Void Act. And what about the second issue? Let's say she was a felon and that this process was pursued and she was given a FOID card. Does that trump the statute against unlawful use of weapons by a felon? I think that counsel is incorrect about how the felon process works. So even if someone had murdered 10 people and 20 years later, they might be able to get into the Civil Rights Restored provision. Then the Unless Clause will kick in. And when the Unless Clause kicks in in Illinois, one can still not possess a firearm federally because as a matter of state law, we restrict individuals who have murdered individuals and other felons from possessing firearms. That individual could then petition to the Illinois State Police to obtain relief from prosecution under the UUW statute, which requires the Director of the State Police to take a look at all of the Section 10 factors to see if that individual, as a matter of state law, could escape prosecution under UUW. If they were successful in that, then they would be able to once again possess firearms. So it is true that there is a disparity. However, as the United States Supreme Court said in Logan, these sorts of disparities were something that Congress actually was well aware of when they were enacting these Section 921 exceptions and was found perfectly acceptable. And so the appropriate avenues you can test your categorization is with Congress, not with ISP, especially in this instance, when she has not received relief from her federal firearm prohibitor. In addition, in Karen, the United States Supreme Court agreed that the rights, the civil rights that were discussed, were to vote, hold public office, and serve on a jury. And when discussing in Logan whether those rights were restored, it had to define what those rights were because it is an important subsidiary question as we discussed in our reply brief. You know, we have jurisprudence that says we should avoid a constitutional issue if possible. Would Mr. Jensen's argument that Logan does not limit civil rights to the three mentioned but could include the right to possess a gun, a constitutional right secured by the Second Amendment, is that a civil right we can restore? That is not. And it actually does no benefit to Ms. Johnson, even if this Court were to hold that firearm rights were civil rights. Ms. Johnson in Illinois, when she had her misdemeanor crime of domestic violence conviction, never revoked her firearm rights. And we don't have a mechanism for restoring those. In Massachusetts, in the DuPont case, Massachusetts in a misdemeanor DUI offense actually revokes individuals' firearm rights. And then you can petition to a firearm licensing authority to get those rights back. And that is what the individual in DuPont did. But she did have the right to possess a firearm before all of this started, did she not? She did not. She had a ploy in court with no right to possess a firearm? Correct. Before the domestic violence conviction? After the 2013 amendments took place, she no longer had the ability to possess a firearm under federal law. As the generalist... 18 years ago, did she have the right to possess a firearm? Well, a firearm right... 18 years ago. Heller was decided in 2008, so there was no firearm right. And then there wouldn't be a state firearm right until after McDonald was. But it's definitely not one of the core civil rights that was discussed. In addition, I just wanted to highlight that the federal mental health provisions are very different than the misdemeanor crime of domestic violence provisions under federal law. And under those federal mental health divisions provisions, they allow individuals to grant relief under subsection F, including states and courts, because in 2007 Congress implemented the NICS Improvement Amendments Act of 2007 that created specialized grants for relief for states and courts in order to grant relief akin to the federal safety vow. But when Congress was enacting this in 2007, it did not add a similar provision for misdemeanor crimes of domestic violence. Instead, it stuck with the same exceptions to have pardons, expungements, and rape restoration, and potentially the federal safety vow for those suffering, or for those who have a misdemeanor crime of domestic violence conviction. In addition, I would like to point out that in Schoen, the Seventh Circuit was really discussing DICTA when it was discussing classified challenges. But the Sixth and the Ninth Circuits in Chauvin and Stimmel were actually picking up these as-applied challenges with arguments concerning recidivism and passage of time. And they ultimately found that they were inappropriate because they would erode the valid, categorical judgments that Congress was allowed to make. And if there are no further questions, we would ask that this Court reverse the Circuit Court's judgment and follow all federal precedent concerning the constitutionality of Section 192G9 and the provisions of the Constitution. Thank you. Case number 124213, Johnson v. Illinois State Police will be taken under advisement as agenda number 10. Thank you Ms. Brule and Mr. Jensen for your arguments this morning.